UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DANDRE ALEXANDER,

        Plaintiff,            Case No. 2:16-cv-64

v.                                     Honorable R. Allan Edgar

PENNY FILLION, et al.,

        Defendants.

                                      /

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant State of Michigan. The Court will serve the complaint against Defendants Fillion, Russo, MacDowell, Chapman, Waske, Bennet, Benoit, Merling, Millette, Pietrangelo, and Unknown Party Estate of Michael Brostoski with regard to Plaintiff's retaliation, Eighth Amendment, and pendent state law claims.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Dandre Alexander, a state prisoner currently confined at the Macomb Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Nurse Penny Fillion, the State of Michigan, Danya Russo, Amy MacDowell, Nurse Unknown Chapman, Tiffany Waske, Maria Bennet, Kimberly Benoit, Health Care Nurse Theresa Merling, Physician Michael Millette, Nurse Evelyn R. Pietrangelo[1], and Unknown Party Estate of Michael Brostoski.

In his complaint, Plaintiff alleges that on November 3, 2013, while he was confined at the Chippewa Correctional Facility (URF), Plaintiff submitted a grievance on Defendant Russo. On November 8, 2013, was interviewed on the grievance by Defendant Fillion, who told Plaintiff not to write up her staff and then run to her for help. On December 4, 2013, Plaintiff was interviewed on another grievance by Defendant Fillion, who stated:

> I'm getting sick of you. I'll put you on the list when I feel like it. Maybe today, maybe not. Either way your [sic] going to wait. You'll see that your [sic] always going to have to run to us to get treatment. We run the show.

(ECF No. 1, PageID.7.)

On December 22, 2013, Plaintiff was involved in a fight and suffered a broken left hand. Plaintiff was placed in segregation and requested health care for his painful left hand. Defendant Pietrangelo refused to provide Plaintiff with ice for his hand, stating that she did not feel like it. On December 23, Defendant Millette looked at Plaintiff's hand and stated that he would be

---

[1] Evelyn R. Pietrangelo is named as a Defendant in the body of Plaintiff's complaint.

back, but if not, Plaintiff would be alright. On December 24, 2013, Defendant Bennet brought Plaintiff ice and told him that first shift had stated that Plaintiff did not need any ice. Defendant Bennet did not provide any further treatment. On December 25, 2013, Plaintiff saw Defendant Fillion making rounds and asked for help with his painful left hand. Defendant Fillion told Plaintiff to use his other hand and stop writing grievances because it would not change anything. Defendant Fillion further stated, "Don't bite the hand that feeds you." (ECF No. 1, PageID.7.)

On December 26, 2013, Defendant Chapman refused Plaintiff's request for help, stating that his hand was fine and to file a kite. On December 27, 2013, Case Manager Melody K. Chapin told Defendant Fillion that Plaintiff needed help, but Defendant Fillion just said that Plaintiff should file a kite. Later that day, Defendant Waske denied Plaintiff's request for healthcare, telling Plaintiff not to ask for medical attention on her time. Subsequently, Defendant MacDowell denied Plaintiff's request for help, stating that he was becoming a pest and that she was busy. On December 29, 2013, Defendant Pietrangelo responded to Plaintiff's request for help by telling him to submit a kite. Plaintiff stated that he had already done so twice, and Defendant Pietrangelo told him to put in another one. At some point, when Defendant Merling was providing treatment for a bite wound, she refused Plaintiff's request for treatment of his hand, stating that he was lucky to be receiving antibiotics. Defendant Benoit also refused to provide treatment for Plaintiff's broken hand, stating that there was nothing he could do.

On December 31, 2013, Plaintiff was called out to see Defendant Millette for a groin injury, and Plaintiff told him that his hand felt broken. Defendant Millette told Plaintiff that he would put him on the list for an x-ray, but refused to give Plaintiff anything for pain or to wrap the hand. On January 6, 2014, Defendant Russo responded to Plaintiff's request for help by stating:

>I'm not helping you. You tried to get me in trouble. Let's see if you can still write complaints with your jacked up hand.

(ECF No. 1, PageID.9.)

Plaintiff was called out for x-rays later that day. After the x-ray was taken, the x-ray technician stated that Plaintiff's hand appeared to be fractured. Defendant Millette was present during the x-ray and whispered, "Oh shit. Looks like we might be in trouble. I gotta put it off my back." (ECF No. 1, PageID. 9.) Defendant Millette then said more loudly, "Well, everything looks good. Nothing fractured or broken. I gotta send the x-ray to a radiologist to make a final determination." (ECF No. 1, PageID. 9.) Defendant Millette refused Plaintiff's request to see the x-ray.

In January 9, 2014, Plaintiff was finally treated for his broken hand. While Defendant Russo was wrapping Plaintiff's hand in a splint, Plaintiff asked why it had taken so long for him to receive treatment. Defendant Russo stated that it had been to teach Plaintiff a lesson and asked whether Plaintiff had learned it. On February 19, 2014, Defendant Waske demanded that Plaintiff return the splint despite the fact Plaintiff was still having pain. Defendant Waske told Plaintiff that she did not care if his hand fell off and Plaintiff reluctantly returned the splint. Plaintiff kited for a replacement splint. On February 26, 2014, Plaintiff received another splint. Two days later, Dr. Brostoski, now deceased, demanded that Plaintiff return the new splint and told him he would only be getting ibuprofen. Plaintiff claims that Dr. Brostoski roughly examined his injured hand. Dr. Brostoski later came by Plaintiff's cell, roughly squeezed Plaintiff's hand, said he had brought the splint back, but refused to give it to Plaintiff, and refused to give Plaintiff anything more than

ibuprofen for pain. On March 3, 2014, Defendants Russo and Fillion both asked Plaintiff if he had learned his lesson yet.

On March 15, 2014, Plaintiff was taken offsite to see a specialist for his hand. The specialist ordered therapy and cream to help relieve pain. On March 15, 2014, Defendant Millette lied and documented that Plaintiff had refused therapy and pain relief cream. Plaintiff claims that he is still experiencing complications from his hand injury. Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments, as well as under state law. Plaintiff seeks damages.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff may not maintain a § 1983 action against the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000

WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the State of Michigan.

However, Plaintiff's claims that the actions of the remaining Defendants were motivated by a desire to retaliate against Plaintiff for filing grievances against health care staff, as well as is Eighth Amendment claims, are non-frivolous and may not be dismissed on initial review. In addition, Plaintiff's pendent state law claims are also not properly dismissed at this time.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the State of Michigan will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Fillion, Russo, MacDowell, Chapman, Waske, Bennet, Benoit, Merling, Millette, Pietrangelo, and Unknown Party Estate of Michael Brostoski with regard to Plaintiff's retaliation, Eighth Amendment, and pendent state law claims.

An Order consistent with this Opinion will be entered.


Dated:     5/31/2016                            */s/ R. Allan Edgar*
                                                R. Allan Edgar
                                                United States District Judge