UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                              Case No. 2:16-cv-64
                                            HON.  GORDON J. QUIST

PENNY FILLION, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner D'Andre Alexander pursuant to 42 U.S.C. § 1983, against Defendants Penny Fillion, Amy MacDowell, Unknown Chapman, Tiffany Waske, Maria Bennet, Kimberly Benoit, Theresa Merling, Michael Millette, and Evelyn R. Pietrangelo.[1]  In the screening opinion, the Court determined that Plaintiff's viable claims include retaliation claims, Eighth Amendment claims, and several pendent state law claims.  Defendants Fillion, MacDowell, Waske, Bennett, Benoit, Merling, and Chapman (the MDOC Defendants) have moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.  (ECF No. 28.)  Plaintiff has responded.  (ECF No. 30.)  The MDOC Defendants have replied.  (ECF No. 31.)  This matter is now ready for decision.

The Court has previously summarized Plaintiff's allegations:

> In his complaint, Plaintiff alleges that on November 3, 2013, while he was confined at the Chippewa Correctional Facility (URF), Plaintiff submitted a grievance on Defendant Russo. On November 8, 2013, was interviewed on the grievance by Defendant Fillion, who told Plaintiff not to write up her staff and then run to her for help. On

---

[1] It should be noted that Defendant Pietrangelo waived service of the complaint but has not yet made an appearance in this case.  In addition, Plaintiff sued the Unknown Party Estate of Michael Brostoski. However, the United States Marshall Services was unable to execute service on this party.

December 4, 2013, Defendant Fillion interviewed Plaintiff regarding a different grievance.  Defendant Fillion stated:

> I'm getting sick of you.  I'll put you on the list when I feel like it.  Maybe today, maybe not. Either way your [sic] going to wait. You'll see that your [sic] always going to have to run to us to get treatment.  We run the show.

(ECF No. 1, PageID.7.)

On December 22, 2013, Plaintiff was broke his left hand in a fight.  He was placed in segregation and requested health care for his painful left hand.  Defendant Pietrangelo refused to give Plaintiff ice for his hand.  On December 23, Defendant Millette looked at Plaintiff's hand and stated that he would be back, but if not, Plaintiff would be alright.  On December 24, 2013, Defendant Bennet brought Plaintiff ice and told him that first shift had stated that Plaintiff did not need any ice.  Defendant Bennet did not provide any further treatment.  On December 25, 2013, Plaintiff saw Defendant Fillion making rounds and asked for help with his painful left hand.  Defendant Fillion told Plaintiff to use his other hand and stop writing grievances because it would not change anything. Defendant Fillion further stated, "Don't bite the hand that feeds you."  (ECF No. 1, PageID.7.)

On December 26, 2013, Defendant Chapman refused Plaintiff's request for help, stating that his hand was fine and to file a kite.  On December 27, 2013, Case Manager Melody K. Chapin told Defendant Fillion that Plaintiff needed help, but Defendant Fillion just said that Plaintiff should file a kite. Later that day, Defendant Waske denied Plaintiff's request for healthcare, telling Plaintiff not to ask for medical attention on her time.  Subsequently, Defendant MacDowell denied Plaintiff's request for help, stating that he was becoming a pest and that she was busy. On December 29, 2013, Defendant Pietrangelo responded to Plaintiff's request for help by telling him to submit a kite.  Plaintiff stated that he had already done so twice, and Defendant Pietrangelo told him to put in another one. At some point, when Defendant Merling was providing treatment for a bite wound, she refused Plaintiff's request for treatment of his hand, stating that he was lucky to be receiving antibiotics. Defendant Benoit also refused to provide treatment for Plaintiff's broken hand, stating that there was nothing he could do.

On December 31, 2013, Plaintiff was called out to see Defendant Millette for a groin injury, and Plaintiff told him that his hand felt broken. Defendant Millette told Plaintiff that he would put him on the list for an x-ray, but refused to give Plaintiff anything for pain or to

wrap the hand.  On January 6, 2014, Defendant Russo responded to Plaintiff's request for help by stating:

> I'm not helping you. You tried to get me in trouble.  Let's see if you can still write complaints with your jacked up hand.

(ECF No. 1, PageID.9.)

Plaintiff was called out for x-rays later that day. After the x-ray was taken, the x-ray technician stated that Plaintiff's hand appeared to be fractured.  Defendant Millette was present during the x-ray and whispered, "Oh shit.  Looks like we might be in trouble.  I gotta put it off my back." (ECF No. 1, PageID. 9.) Defendant Millette then said more loudly, "Well, everything looks good.  Nothing fractured or broken.  I gotta send the x-ray to a radiologist to make a final determination." (ECF No. 1, PageID. 9.)  Defendant Millette refused Plaintiff's request to see the x-ray.

[On] January 9, 2014, Plaintiff was finally treated for his broken hand. While Defendant Russo was wrapping Plaintiff's hand in a splint, Plaintiff asked why it had taken so long for him to receive treatment. Defendant Russo stated that it had been to teach Plaintiff a lesson and asked whether Plaintiff had learned it.

On February 19, 2014, Defendant Waske demanded that Plaintiff return the splint despite the fact Plaintiff was still having pain. Defendant Waske told Plaintiff that she did not care if his hand fell off and Plaintiff reluctantly returned the splint.  Plaintiff kited for a replacement splint.  On February 26, 2014, Plaintiff received another splint.  Two days later, Dr. Brostoski, now deceased, demanded that Plaintiff return the new splint and told him he would only be getting ibuprofen.  Plaintiff claims that Dr. Brostoski roughly examined his injured hand.  Dr. Brostoski later came by Plaintiff's cell, [roughly] squeezed Plaintiff's hand, said he had brought the splint back, but refused to give it to Plaintiff, and refused to give Plaintiff anything more than ibuprofen for pain. On March 3, 2014, Defendants Russo and Fillion both asked Plaintiff if he had learned his lesson yet.

On March 15, 2014, Plaintiff was taken offsite to see a specialist for his hand.  The specialist ordered therapy and cream to help relieve pain.  On March 15, 2014, Defendant Millette lied and documented that Plaintiff had refused therapy and pain relief cream.  Plaintiff claims that he is still experiencing complications from his hand injury. Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments, as well as under state law.  Plaintiff seeks damages.

(ECF No. 7, PageID.70-73.)

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material*

*Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control  *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[2] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was

---

[2] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In this case, Plaintiff filed one grievance that is related to his allegations—Grievance # URF-14-01-0143-12E3. Defendants argue that this grievance does not exhaust Plaintiff's claims because it was not timely filed. It appears that Defendants may be correct. The date of the grievance is January 12, 2014.[3] The MDOC policy requires that all grievances be filed within seven business days of the alleged incident. Therefore, Plaintiff's grievance could have been denied as untimely with respect to the alleged conduct of Defendants Bennett, Fillion, Haske, and MacDowell that occurred between December 24, 2013 and December 27, 2013. However, Plaintiff's grievance was never rejected as untimely. A procedural bar, such as timeliness, does not apply if the MDOC never enforced the rule. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

Defendants also argue that a "fair reading of the grievance process in this case confirms that the resolution of the merits and allegations at issue only involved December 31, 2013, January 6, 2014, and January 9, 2014." The undersigned disagrees. At Step I, Plaintiff detailed each event that occurred between December 24, 2013 and December 27, 2013. At Step II, Plaintiff complained that he fractured his hand on December 22, 2013, but he did not receive any treatment from the nurses or health care personal until "eighteen days later." PageID.156. Plaintiff's statements clearly include all the events that occurred between December 24, 2013 and December 27, 2013. At Step III, plaintiff stated that the issue was still not resolved. At no point did any of the responses to the grievance indicate

---

[3] In his response brief, Plaintiff states that he filed the grievance on January 6, 2012. However, it is unlikely that Plaintiff filed the grievance on this date because he describes events that occurred on January 9, 2012.

that any allegations were untimely.  Therefore, Defendants cannot attempt to enforce a procedural rule now because they never enforced it during the grievance process.

Defendants next contend that even if the MDOC waived the procedural rule during the grievance process, the individual Defendants never expressly waived their right to enforce it.  To support their argument, Defendants cite *United States v. Olano*, 507 U.S. 725, 733 (1993), where the Supreme Court discussed the difference between waiver and forfeiture with respect to a criminal defendant's appeal. The Court defined waiver as an "intentional relinquishment or abandonment of a known right." *Id.*  Thus, according to Defendants, they should be able to enforce the procedural rule now because they never intentionally relinquished or abandoned it.  However, Defendants' argument has no merit because they do not have any individual right in enforcing a procedural rule within the MDOC grievance procedure.

Finally, Defendants argue that Plaintiff never grieved the alleged conduct of Defendants Waske, Fillion, and Merling, that occurred between February 2015 and March 2015. Plaintiff alleged that, during this time period, Defendant Waske took away his splint, Defendant Merling refused to give back the splint, and Defendant Fillion asked, "Are you done playing games yet."  Plaintiff did not file a separate grievance alleging any of these facts.  However, Plaintiff did add that Defendant Waske took his splint at Step III of Grievance # URF-14-01-0143-12E3.  Although the MDOC grievance procedure requires an inmate to exhaust his claim at all three levels, Plaintiff asserts that he is allowed to raise multiple issues in a grievance as long as the issues are related.  Plaintiff's argument fails because he did not add multiple related issues at Step I of the grievance procedure. Instead, Plaintiff added a related claim against Defendant Waske at Step III of the grievance.  This does not exhaust his allegation at all three steps.  In addition, Plaintiff does not offer any explanation as to how he exhausted the alleged conduct of Defendant Merling and Defendant Fillion that occurred between February 2015 and March 2015.  Therefore, in the opinion of the undersigned, Plaintiff failed to exhaust his administrative remedies on the alleged conduct between February 2015 and March 2015.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 16) be granted in part and denied in part. Plaintiff exhausted his administrative remedies on his claims that occurred in December 2014 and January 2015. However, Plaintiff failed to exhaust his administrative remedies on the conduct of Defendants Waske, Merling, and Fillon, that occurred between February 2015 and March 2015.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    March 14, 2017                             */s/ Timothy P. Greeley*
                                                     TIMOTHY P. GREELEY
                                                     UNITED STATES MAGISTRATE JUDGE