UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

        Plaintiff,

v.                                    Case No. 2:16-cv-64
                                    HON.  GORDON J. QUIST

PENNY FILLION, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against various prison officials and health care personnel working at Chippewa Correctional Facility.  After initial screening pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. § 1997e(c), the Court served the complaint on Defendants "with regard to Plaintiff's retaliation, Eighth Amendment, and pendent state law claims."  (ECF No. 7, PageID.75.) Defendant Michael Millette has now filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in which he argues that the Court should dismiss Plaintiff's equal protection, 42 U.S.C. § 1985 conspiracy, retaliation, and pendent state law claims.  (ECF No. 51.)  Plaintiff has responded.  This matter is ready for decision.

        In its screening opinion, the Court previously summarized the allegations in Plaintiff's complaint:

        In his complaint, Plaintiff alleges that on November 3, 2013, while he was confined at the Chippewa Correctional Facility (URF), Plaintiff submitted a grievance on Defendant Russo. On November 8, 2013, was interviewed on the grievance by Defendant Fillion, who told Plaintiff not to write up her staff and then run to her for

help. On December 4, 2013, Defendant Fillion interviewed Plaintiff regarding a different grievance. Defendant Fillion stated:

> I'm getting sick of you. I'll put you on the list when I feel like it. Maybe today, maybe not. Either way your [sic] going to wait. You'll see that your [sic] always going to have to run to us to get treatment. We run the show.

(ECF No. 1, PageID.7.)

On December 22, 2013, Plaintiff broke his left hand in a fight. He was placed in segregation and requested health care for his painful left hand. Defendant Pietrangelo refused to give Plaintiff ice for his hand. On December 23, Defendant Millette looked at Plaintiff's hand and stated that he would be back, but if not, Plaintiff would be alright. On December 24, 2013, Defendant Bennet brought Plaintiff ice and told him that first shift had stated that Plaintiff did not need any ice. Defendant Bennet did not provide any further treatment. On December 25, 2013, Plaintiff saw Defendant Fillion making rounds and asked for help with his painful left hand. Defendant Fillion told Plaintiff to use his other hand and stop writing grievances because it would not change anything. Defendant Fillion further stated, "Don't bite the hand that feeds you." (ECF No. 1, PageID.7.)

On December 26, 2013, Defendant Chapman refused Plaintiff's request for help, stating that his hand was fine and to file a kite. On December 27, 2013, Case Manager Melody K. Chapin told Defendant Fillion that Plaintiff needed help, but Defendant Fillion just said that Plaintiff should file a kite. Later that day, Defendant Waske denied Plaintiff's request for healthcare, telling Plaintiff not to ask for medical attention on her time. Subsequently, Defendant MacDowell denied Plaintiff's request for help, stating that he was becoming a pest and that she was busy. On December 29, 2013, Defendant Pietrangelo responded to Plaintiff's request for help by telling him to submit a kite. Plaintiff stated that he had already done so twice, and Defendant Pietrangelo told him to put in another one. At some point, when Defendant Merling was providing treatment for a bite wound, she refused Plaintiff's request for treatment of his hand, stating that he was lucky to be receiving antibiotics. Defendant Benoit also refused to provide treatment for Plaintiff's broken hand, stating that there was nothing he could do.

On December 31, 2013, Plaintiff was called out to see Defendant Millette for a groin injury, and Plaintiff told him that his hand felt broken. Defendant Millette told Plaintiff that he would put

him on the list for an x-ray, but refused to give Plaintiff anything for pain or to wrap the hand.  On January 6, 2014, Defendant Russo responded to Plaintiff's request for help by stating:

> I'm not helping you. You tried to get me in trouble.  Let's see if you can still write complaints with your jacked up hand.

(ECF No. 1, PageID.9.)

Plaintiff was called out for x-rays later that day. After the x-ray was taken, the x-ray technician stated that Plaintiff's hand appeared to be fractured.  Defendant Millette was present during the x-ray and whispered, "Oh shit.  Looks like we might be in trouble.  I gotta put it off my back." (ECF No. 1, PageID. 9.) Defendant Millette then said more loudly, "Well, everything looks good.  Nothing fractured or broken.  I gotta send the x-ray to a radiologist to make a final determination."  (ECF No. 1, PageID. 9.)  Defendant Millette refused Plaintiff's request to see the x-ray.

[On] January 9, 2014, Plaintiff was finally treated for his broken hand. While Defendant Russo was wrapping Plaintiff's hand in a splint, Plaintiff asked why it had taken so long for him to receive treatment.  Defendant Russo stated that it had been to teach Plaintiff a lesson and asked whether Plaintiff had learned it.

On February 19, 2014, Defendant Waske demanded that Plaintiff return the splint despite the fact Plaintiff was still having pain. Defendant Waske told Plaintiff that she did not care if his hand fell off and Plaintiff reluctantly returned the splint.  Plaintiff kited for a replacement splint.  On February 26, 2014, Plaintiff received another splint.  Two days later, Dr. Brostoski, now deceased, demanded that Plaintiff return the new splint and told him he would only be getting ibuprofen.  Plaintiff claims that Dr. Brostoski roughly examined his injured hand.  Dr. Brostoski later came by Plaintiff's cell, [roughly] squeezed Plaintiff's hand, said he had brought the splint back, but refused to give it to Plaintiff, and refused to give Plaintiff anything more than ibuprofen for pain. On March 3, 2014, Defendants Russo and Fillion both asked Plaintiff if he had learned his lesson yet.

On March 15, 2014, Plaintiff was taken offsite to see a specialist for his hand.  The specialist ordered therapy and cream to help relieve pain.  On March 15, 2014, Defendant Millette lied and documented that Plaintiff had refused therapy and pain relief cream. Plaintiff claims that he is still experiencing complications from his

hand injury. Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments, as well as under state law. Plaintiff seeks damages.

(ECF No. 7, PageID.70-73.)

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require detailed factual allegations, it does require more than labels and the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Defendant Millette first argues that Plaintiff has failed to state an equal protection claim and 42 U.S.C § 1985 conspiracy claim. As mentioned above, the screening opinion never addressed these claims, and the Court did not serve the complaint on Defendants with regard to

these claims.  Nonetheless, the "Claims for Relief" section of Plaintiff's complaint provides that Defendant Millette's actions violated "the equal protection clause of the 14th Amendment, and 42 U.S.C. §§ 1985, 1986." (ECF No. 1, PageID.12.)

To the extent Plaintiff's complaint alleged violations of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C §§ 1985, 1986, the undersigned recommends that those claims be dismissed.  First, Plaintiff concedes in his response brief that he has failed to state an equal protection claim.  Next, to maintain a cause of action for conspiracy under § 1985, a plaintiff must establish the following four elements: "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp*., 40 F.3d 837, 839 (6th Cir. 1994)).  "The Supreme Court requires that § 1985 claims contain allegations of 'class-based, invidiously discriminatory animus.'" *Webb v. United States*, 789 F.3d 647, 72 (6th Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir.1996); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).  Here, Plaintiff has failed to state a claim under § 1985 because he has not alleged that he is a member of a protected class nor has he alleged that Defendants acted with a "discriminatory animus" based on a protected classification.  Finally, Plaintiff has failed to state a claim under 42 U.S.C. § 1986 because a § 1986 claim is derivative and conditioned on establishing a § 1985 violation.  *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000); *Haverstick Enter., Inc. v. Fin. Fed. Credit*, 32 F.3d 989, 994 (6th Cir. 1994).

Next, Defendant Millette argues that Plaintiff failed to state a retaliation claim.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff alleges that Defendant Millette refused to provide medical treatment for Plaintiff's broken hand in retaliation for him filing three grievances.  Defendant Millette was named in at least one of the grievances.  Plaintiff states that Defendant Millette would not prescribe pain medication despite the x-ray clearly showing that his hand was broken and that Defendant Millette intentionally changed and interfered with the treatment plan prescribed to Plaintiff by a hand specialist.  Contrary to Defendant Millette's argument, Plaintiff has alleged more than conclusory allegations. He has alleged specific facts that establish a retaliation claim.  Therefore, in the opinion of the undersigned, Plaintiff's retaliation claim against Defendant Millette should not be dismissed.

Finally, Defendant Millette argues that Plaintiff's pendent state law claims should be dismissed because Plaintiff did not comply with the prerequisites for bringing a medical malpractice claim under Michigan law.  In his complaint, Plaintiff asserts gross negligence, intentional infliction of emotional distress, and medical malpractice state law claims against Defendant Millette.  The undersigned must first determine whether Plaintiff's claims are subject to the prerequisites of bringing a medical malpractice claim.  If the action "sounds in medical

malpractice," the action "is subject to the procedural and substantive requirements that govern medical malpractice actions."  *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004).  Michigan courts apply a two-part test to determine whether the claim sounds in medical malpractice.  *Id.*  First, the claim must "pertain[] to an action that occurred within the course of a professional relationship."  *Id.*  Second, the claim must "raise[] questions of medical judgment beyond the realm of common knowledge and experience."  *Id.*  In this case, both parties agree that Plaintiff's state law claims occurred within the course of a professional relationship and that the claims raise questions of medical judgment.  Therefore, Plaintiff's gross negligence, intentional infliction of emotional distress, and medical malpractice claims are subject to the prerequisites of bringing a medical malpractice claim under Michigan Law.

Pursuant to Mich. Comp. Laws § 600.2912d, a plaintiff who brings a medical malpractice claim must include with his complaint an affidavit of merit signed by a health professional, attesting to the defendant's failure to meet the standard of practice care.  Federal courts have held that dismissal is appropriate when a plaintiff fails to comply with this requirement.  *See* B*riggs v. Burke*, No. 15-2282, at 7 (6th Cir. July 29, 2016) (unpublished) (holding that the dismissal of an inmate's medical malpractice claim was appropriate because he failed to include a health care professional's affidavit with his complaint as required by Mich. Comp. Laws § 600.2912d); *Raper v. Cotroneo*, 2017 WL 4173507, at *4 (W.D. Mich. Sept. 21, 2017) (dismissing an inmate's medical malpractice claim because he failed to comply with Mich. Comp. Laws §§ 600.2912b and 600.2912d); *Boone v. Heyns*, 2017 WL 3977524, at *4 (E.D. Mich. Sept. 11, 2017) (dismissing an inmate's negligence, medical malpractice, and intentional infliction of emotional distress claims because he failed to comply with Mich. Comp. Laws §§ 600.2912b and 600.2912d); *Simmons v. Rogers*, 2017 WL 1179376, at *5 (W.D. Mich. Mar. 30, 2017) (dismissing an inmate's

gross negligence claim that sounded in medical malpractice because he did not file an affidavit of merit as required by Mich. Comp. Laws § 600.2912d).  Here, Plaintiff did not include an affidavit of merit signed by a health professional.[1]  Plaintiff argues that his complaint should be treated as an affidavit of merit because the complaint was verified and sworn to under the penalty of perjury. However, Plaintiff's complaint was never signed by a healthcare professional, thus, cannot be considered an affidavit of merit under Mich. Com. Laws § 600.2912d.  Therefore, in the opinion of the undersigned, Plaintiff's state law claims should be dismissed because he failed to comply with the prerequisites of bringing a medical malpractice claim under Michigan law.[2]

Accordingly, it is recommended that Defendant Millette's motion to dismiss (ECF No. 51) be granted in part and denied in part.  Plaintiff's state law claims against Defendant Millette should be dismissed.  In addition, to the extent Plaintiff alleges equal protection and 42 U.S.C §§ 1985 and 1986 claims, those claims should be dismissed.  However, Plaintiff's retaliation claim should not be dismissed.  Therefore, Plaintiff's remaining claims against Defendant Millette in this case include: (1) a retaliation claim, (2) a deliberate indifference claim, and (3) a cruel and unusual punishment claim.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

---

[1] The undersigned notes that it may be challenging for an inmate to comply with this requirement and obtain an affidavit of merit from a medical professional.  However, this is a state law claim, and the Michigan courts have determined that the affidavit of merit requirement applies to inmates housed within the Michigan Department of Corrections.  *See Grumbley v. Governor*, 2013 WL 1501026, at *2 (Mich. Ct. App. Apr. 11, 2013).  Moreover, the majority of courts apply this affidavit requirement to medical malpractice claims brought in federal court.  *See Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 858 (W.D. Mich. 2012) ([T]he court agrees with the majority of cases addressing this issue and finds that Michigan's affidavit-of-merit statute should be applied to malpractice claims brought in federal court.).

[2] Defendant Millette also argues that Plaintiff failed to comply with Mich. Comp. Laws § 600.2912b, which requires Plaintiff to provide notice of intent to sue.  Because the undersigned finds that Plaintiff's complaint should be dismissed for failing to comply with Mich. Comp. Laws § 600.2912d, the undersigned does not address this argument.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140

(1985).

Dated:  October 18, 2017

       /s/ Timothy P. Greeley       
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE