UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                              Case No. 2:16-cv-64
                                                HON. GORDON J. QUIST
PENNY FILLION, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against various prison officials and health care personnel working at Chippewa Correctional Facility (URF). Defendants Penny Fillion, Dayna Russo, Amy MacDowell, Unknown Chapman, Tiffany Waske, Maria Bennet, Kimberly Benoit, Theresa Merling, and Evelyn R. Pietrangelo (the MDOC Defendants) have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and assert that they are entitled to qualified immunity. (ECF No. 115). Defendant Michael Millette, who has retained separate counsel, has also moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 106). Plaintiff has filed a response to both motions. (ECF Nos. 120 & 123). This matter is now ready for decision.

This case arises from the alleged inadequate medical treatment of Plaintiff's broken hand at URF, which Plaintiff alleges was in retaliation for filing grievances. On November 3, 2013, Plaintiff filed a grievance against Defendant Russo. On November 8th, Plaintiff was interviewed on the grievance by Defendant Fillion, who told Plaintiff not to write up her staff and

then run to her for help. On December 4th, Plaintiff was again interviewed by Defendant Fillion, who stated:

> I'm getting sick of you. I'll put you on the list when I feel like it. Maybe today, maybe not. Either way your [sic] going to wait. You'll see that your [sic] always going to have to run to us to get treatment. We run the show.

(PageID.7).

On December 22nd, Plaintiff injured his left hand during a fight with another inmate. Shortly thereafter, Plaintiff was examined by Defendants Pietrangelo and Merling. According to his medical records, Plaintiff complained of pain in his left thumb and stated that another prisoner may have bit him during the fight. (PageID.637). The medical records further show that Plaintiff was ordered to ice his hand three times a day, apply Neosporin to the bite wound, and begin taking pain medication. Plaintiff alleges that the medical record is false. He states that he told Defendant Pietrangelo about the severe pain in his hand and she refused to give him any ice. When Plaintiff complained of the pain to Defendant Merling, Defendant Merling responded by telling Plaintiff that he was lucky to be receiving antibiotics. Plaintiff also complained to Defendant Benoit, but Defendant Benoit told Plaintiff there was nothing she could do and that he should submit a kite.

On December 23rd, Plaintiff was examined by Defendant Millette. Plaintiff again alleges that he complained of his swollen left hand and broken hand symptoms, including the sound of the "bone clicking." However, Defendant Millette apparently only treated Plaintiff for his bite wound and prescribed Augmentin, which is antibiotic used to treat bacterial infections. Defendant Millette also ordered Plaintiff to undergo testing for hepatitis and HIV.

On December 24th, Defendant Bennet walked by Plaintiff's cell and Plaintiff asked why he had not received any ice for his hand. Defendant Bennet replied that she gave ice to the

first shift but first shift said that Plaintiff did not need any ice. Plaintiff alleges that the "first shift" included Defendants Fillion, Merling, Benoit, and Russo. Plaintiff further alleges that Defendant Bennet "never commenced to help or treat Plaintiff's hand." (PageID.733). On December 25th, Defendant Fillion made rounds in Plaintiff's housing unit. When Defendant Fillion approached Plaintiff's cell, Plaintiff requested medical treatment for his hand because the "bone was clicking." (PageID.729). In response, Defendant Fillion told Plaintiff to use his other hand, stop writing grievances, and "don't bite the hand that feeds you." (PageID.730).

On December 26th, Plaintiff attempted to obtain treatment for his hand from Defendant Chapman. However, Defendant Chapman replied, "[y]our hand is fine. Don't worry about it. If you want help, put in a kite." (PageID.731). On December 27th, Plaintiff complained to Defendant Waske about his hand pain. Defendant Waske replied, "you don't ask for medical attention on my time." (PageID.732). On an unspecified date, Plaintiff attempted to obtain treatment from Defendant MacDowell. However, Defendant MacDowell refused to help because she was busy and told Plaintiff that he was becoming a pest. On December 29th, Plaintiff again complained to Defendant Pietrangelo to which she responded by telling Plaintiff to submit a kite. When Plaintiff said that he already submitted a kite, Defendant Pietrangelo told him to put in another one. Plaintiff responded, "I need assistance now! My hand feels broken. I need a[n] x-ray and treatment now!" (PageID.735). Defendant Pietrangelo replied, "oh, do you want my x-ray glasses? Ha!"

On December 31st, Defendant Millette examined Plaintiff following his complaints of hand pain and "testicular pain from a shakedown." (PageID.644). During this examination, Plaintiff denied having pain in his groin but told Defendant Millette that he was still experiencing severe pain in his left hand and believed that it was broken. Defendant Millette noted that there

was "some swelling and bruising of the thumb and index finger" and "some palmar bruising with mild swelling of the hand." (PageID.644).  Plaintiff was also unable to "ball up [his] fist." Defendant Millette subsequently scheduled Plaintiff to have an x-ray on his left hand after the technician returned from holiday vacation.  However, Defendant Millette did not provide any additional treatment to Plaintiff, such as providing pain medication or a splint.

On January 6, 2014, Plaintiff complained to Defendant Russo about his hand to which Defendant Russo replied, "I'm not helping you. You tried to get me in trouble.  Let's see if you can still write complaints with your jacked up hand." (PageID.730).  Later that day, Plaintiff was called out for x-ray.[1]  Plainitiff alleges that the x-ray technician believed that Plaintiff's hand was fractured.  Defendant Millette, who was present during the x-ray, whispered to the technician, "Oh sxxt.  Looks like we might be in trouble."  (PageID.769).  Defendant Millette then told Plaintiff that everything looked fine, but the x-ray would be sent out to a radiologist to make a final diagnosis.  When Plaintiff requested to see the x-ray, Defendant Millette refused.

On January 9th, Defendant Millette received the radiologist's report, which found that Plaintiff had a "mildly displaced oblique fracture of the proximal base of the fifth metacarpal bone."  (PageID.649).  Defendant Millette subsequently ordered that Plaintiff use a splint for six weeks and then have a follow-up x-ray.  Later that day, while Defendant Russo was wrapping Plaintiff's hand in a splint, Plaintiff asked Defendant Russo why it took so long for him to receive treatment. Defendant Russo replied, "to teach you a lesson. Did you learn?" (PageID.730).

On February 13th, Plaintiff received a second x-ray.  After reviewing the x-ray, the radiologist found that that the fracture was still visible.  However, the radiologist's report appears

---

[1] Plaintiff has consistently maintained that he received the x-ray on January 6th.  In a grievance response, the respondent—after investigating Plaintiff's electronic medical record—confirmed that Plaintiff received the x-ray on January 6th.  (PageID.159).  However, the medical records suggest that Plaintiff received the x-ray on January 2nd. (PageID.649-650).  Defendants do not address when the x-ray occurred.

to have been transmitted to URF on February 28th. Meanwhile, on February 19th, Defendant Waske demanded that Plaintiff return the splint despite the fact that Plaintiff was still experiencing pain. Plaintiff requested another splint, which he received on February 26th. On February 28th, Plaintiff was examined by Michael Brostoski. Because Plaintiff was still in pain, Brostoski referred Plaintiff to an orthopedic specialist. On March 3rd, Defendants Russo and Fillion both asked Plaintiff if he had learned his lesson yet.

Plaintiff saw the orthopedic specialists on March 10th. The specialist found that the fracture was "well healed at this point" and recommended that Plaintiff be prescribed Voltanen gel, as well as a tennis ball to squeeze to help improve his grip strength. (PageID.669). On March 15th, Plaintiff alleges that Defendant Millette lied when he wrote that Plaintiff refused medical treatment. Defendant Millette also changed the orthopedist's recommendations. According to his medical records, Defendant Millette determined that Plaintiff could squeeze socks instead of a tennis ball and that Motrin should be used instead of Voltaren gel because Voltaren was "non-formulary." (PageID.670). However, in his sworn affidavit, Defendant Millette states that he "directed that [Plaintiff] be provided a kite response with instructions to perform hand-strengthening exercises with a tennis ball." (PageID.720).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there

is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252; *see also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The MDOC Defendants assert that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Plaintiff first alleges that Defendants were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* To satisfy the subjective component, the plaintiff must show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, Defendants attempt to paint Plaintiff's claim as a minor delay in medical treatment and apparently believe that Plaintiff received proper treatment. Although the medical records show that Plaintiff received some treatment for a bite wound on his left thumb and index finger initially on December 22, 2013, Plaintiff alleges that he did not receive any treatment for his broken hand until January 9, 2014. Plaintiff states that he repeatedly complained of the pain and swelling, as well as demonstrated that the bone was making a clicking sound. Despite these repeated complaints, Plaintiff alleges that he did not receive ice, pain medication, or a splint for eighteen days. Thus, the undersigned will first consider whether this eighteen-day delay amounted to an Eighth Amendment violation.

In *Napier v. Madison County,* 238 F.3d 739 (6th Cir. 2001), the Sixth Circuit held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Id.* at 742. However, the Sixth Circuit has since limited the "verifying medical evidence" requirement to "those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004). The Sixth Circuit further explained:

> Where the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise. This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Id.* at 899.

In *Hubbard v. Gross*, 199 F. App'x 433, 438 (6th Cir. 2006), the Sixth Circuit considered a deliberate indifference claim based on the delay of treatment for a broken hand.[2] In that case, the plaintiff suffered a two-hour delay before he received any treatment. *Id.* Under the subjective prong, the court found that there was sufficient evidence to support a finding that the defendants were deliberately indifferent. *Id.* The court reasoned that one of the defendant's testimony suggested that a layperson would know that the plaintiff had a broken hand that required medical care, and the plaintiff testified that "he asked for medical care numerous times and complained of extreme pain and swelling in his hand and wrists." *Id.* However, in upholding a directed verdict for the defendants, the court held that the plaintiff failed to satisfy the objective prong of the deliberate indifference test. *Id.* Although the plaintiff's "broken and swollen hand was 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' [the plaintiff] did not demonstrate that his 'need was not addressed within a reasonable time frame.'" *Id.* (citing *Blackmore*, 390 F.3d at 894, 899-900 (6th Cir. 2004)).

Here, Plaintiff has presented sufficient evidence to satisfy the objective prong of the deliberate indifference test. First, similar to the broken hand in *Hubbard*, Plaintiff's broken hand—which was bruised, swollen, and making a bone-clicking noise—would likely be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." In addition, this case differs from *Hubbard* because Plaintiff suffered an eighteen-day delay as opposed to a minor two-hour delay. In the opinion of the undersigned, Plaintiff has demonstrated that his medical need was not addressed within a reasonable time frame.

---

[2] Although *Hubbard* involved a deliberate indifference claim under the Fourteenth Amendment, the Sixth Circuit applies the same standard to deliberate indifference claims under the Eighth Amendment. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

In addition, Plaintiff has presented sufficient evidence to satisfy the subjective component of the deliberate indifference test. During the eighteen-day period, Plaintiff alleges that he requested medical attention from each Defendant because of the pain, swelling, bruising, and bone-clicking noise. In his sworn affidavit, Defendant Millette does not mention that Plaintiff complained of this pain at any point before December 31, 2013. Furthermore, none of the MDOC Defendants submitted an affidavit to dispute whether Plaintiff requested medical attention or to explain why he did not receive medical attention. Plaintiff further alleges that he was denied medical attention in retaliation for filing grievances. To the extent Defendant's deny that Plaintiff requested medical attention for his broken hand, the undersigned finds that a question of fact exists that should be resolved at trial. In the opinion of the undersigned, Defendants have failed to show that they are entitled to judgment as a matter of law on the deliberate indifference claim based on the eighteen-day delay of treatment.

Next, Plaintiff alleges that he received inadequate medical treatment after January 9, 2014. In his deposition, Plaintiff characterized the treatment he received after January 9th as "grossly insufficient." (PageID.715). These claims appear to be based on two separate incidents. First, Plaintiff alleges that Defendant Waske took Plaintiff's splint from him on February 19, 2014. However, Plaintiff received the splint back shortly thereafter. Second, Plaintiff alleges that Defendant Millette was deliberately indifferent in March 2014 when he intentionally changed the orthopedic specialist's treatment recommendations. The orthopedic specialist recommended that Plaintiff be prescribed Voltanen gel and squeeze a tennis ball to help his grip strength. (PageID.669). In his sworn affidavit, Defendant Millette states that he "directed that [Plaintiff] be provided a kite response with instructions to perform hand-strengthening exercises with a tennis ball." (PageID.720). This statement directly contradicts Plaintiff's medical records, which provide

that Defendant Millette instructed Plaintiff to squeeze a sock instead of a tennis ball, and to use Motrin instead.  Despite these factual inconsistencies, the undersigned finds that although these allegations may amount to medical malpractice, they do not rise to the level of an Eighth Amendment violation.   Contrary to Plaintiff's allegations, Defendant Millette, who is a physician's assistant, did not disregard the orthopedic specialist's orders.  Instead, he considered the specialist's *recommendations* and made a medical judgment as to the appropriate treatment for Plaintiff.

Plaintiff also alleges that he was denied the medical treatment for his hand in retaliation for filing grievances.  He asserts retaliation claims against each Defendant with the exception of Defendant Bennet.  (PageID.728).  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Defendants argue that Plaintiff failed to satisfy all three elements of a retaliation claim.  The undersigned disagrees.  First, Plaintiff was engaged in the protected conduct of filing grievances.  Second, the complete denial of medical treatment for a broken hand constitutes an adverse action capable of deterring a person of ordinary firmness from engaging in the protected conduct. Third, the evidence, viewed in favor of Plaintiff, establishes that the adverse action was motivated, at least in part, by the protected conduct.  Specifically, Plaintiff has alleged that several Defendants told him that he was being denied medical treatment because of his prior grievances and complaints.  For example, Defendants Russo and Fillion told Plaintiff that he was denied

treatment in order to teach him a lesson. And, on multiple occasions, Plaintiff alleges that Defendants asked whether he learned his lesson yet. Although Defendant Millette argues that Plaintiff cannot establish a retaliation claim against him because Plaintiff did not file a grievance against him until January 12, 2014, (PageID.622), Plaintiff filed several other grievances against other Defendants. Plaintiff still alleges that Defendant Millette denied him medical treatment because of these other grievances. Therefore, in the opinion of the undersigned, Defendants have failed to demonstrate that they are entitled to summary judgment on Plaintiff's retaliation claims.

Finally, because the MDOC Defendants assert they are entitled to qualified immunity, the undersigned must also determine whether their alleged conduct violates clearly established law of which a reasonable person would know. The Sixth Circuit has stated:

> For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks omitted). "This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. So the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202. "[W]e need not find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law, the unlawfulness must be apparent.'" *Comstock*, 273 F.3d at 711 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (brackets omitted). To evaluate the contours of the right, "we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir.2006) (internal quotation marks omitted). But we need not find a decision on all fours. "[O]utrageous conduct will obviously be unconstitutional" without regard to precedent because "the easiest cases don't even arise." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009) (brackets and internal quotation marks omitted). And even in cases involving less than outrageous conduct, "officials can still be on notice that their conduct violates established law in novel factual circumstances." *Id.* at 377–78 (ellipses and internal quotation marks omitted).

*Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013). Applying this standard, the undersigned finds that it was clearly established in 2013 that healthcare providers, such as Defendants, could not withhold medical treatment in retaliation for filing grievances. *See, e.g.*, *Quigley*, 707 F.3d at 684 ("It is clearly established that a prisoner has a right not to have his known, serious medical needs disregarded by his doctors; a prisoner has a right not to have his doctors be deliberately indifferent to his serious medical needs."); *Warren v. Prison Health Services, Inc.*, 576 F. App'x. 545, 560 (6th Cir. 2014) ("[A]n inmate's right to receive medical treatment for a serious medical need was clearly established by 2010.").

Accordingly, it is recommended that the MDOC Defendants' motion for summary judgment (ECF No. 115) and Defendant Millette's motion for summary judgment (ECF No. 106) be granted in part and denied in part. Defendants' motions should be granted with respect to Plaintiff's Eighth Amendment claim related to the inadequate medical treatment after January 9, 2014. However, Defendants' motions should be denied with respect to all other claims.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  April 13, 2018

                                                /s/ Timothy P. Greeley  
                                                TIMOTHY P. GREELEY  
                                                UNITED STATES MAGISTRATE JUDGE