UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                                  Case No. 2:16-CV-64

PENNY FILLION, et al.,                  HON. GORDON J. QUIST

    Defendants.
_____/

## OPINION AND ORDER

This is a civil rights action brought by state prisoner D'Andre Alexander under 42 U.S.C. § 1983. Defendants Fillion, Russo, MacDowell, Chapman, Waske, Bennet, Benoit, Merling, and Pietrangelo (MDOC Defendants) moved for summary judgment (ECF No. 115), as did Defendant Millette (ECF No. 106). Magistrate Judge Timothy Greeley issued a Report and Recommendation (R & R) recommending that the Court grant the motions with respect to Alexander's Eighth Amendment claim related to inadequate medical treatment after January 9, 2014, and deny the motions with respect to all other claims. (ECF No. 137.) Millette and Alexander filed objections to the R & R. (ECF No. 143 & 144.)

Under Federal Rule of Civil Procedure 72(b), a party "may serve and file specific written objections" to the R & R, and the Court is to consider any proper objection. Local Rule 72.3(b) likewise requires that written objections "shall specifically identify the portions" of the R & R to which a party objects. Under 28 U.S.C. § 636(b), upon receiving objections to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." After

conducting a de novo review of the R & R, the parties' objections, and the pertinent portions of the record, the Court concludes that the R & R should be adopted in part and denied in part.

## Millette's Objections

Millette makes six objections to the R & R, and the Court will address them each in turn.

### 1) Objective Component of Alexander's Deliberate Indifference Claim

Millette makes several arguments that the R & R erred in concluding that Alexander met the objective element of his deliberate indifference claim. First, Millette argues that *Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), applies, not *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004). *Napier* requires prisoners to submit "verifying medical evidence" in certain circumstances. *Blackmore* summarized this requirement as follows:

> In sum, the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. *Napier,* which was relied upon by the district court, falls within this branch of decisions. In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (citing *Napier,* 238 F.3d at 742).

Millette relies primarily upon the language, "*Napier* applies where the plaintiff's 'deliberate indifference' claim is based on the prison's failure to treat a condition adequately." Millette argues that because Alexander received medical treatment for the bite injury on his hand the same day he was injured, Alexander is challenging the prison's failure to treat a condition adequately. Therefore, he argues, *Napier* applies and Alexander's failure to introduce medical proof dooms his claim.

2

The conditions from the bite injury are a separate condition from Alexander's broken hand. Treatment only for the former does not automatically grant Millette a shield for the latter. *Napier* "does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Id.* at 898; *see also Williams v. Michigan Dep't of Corr.*, No. 2:16-CV-72, 2018 WL 1150025, at *2 (W.D. Mich. Mar. 5, 2018). The R & R concluded that Alexander's broken hand would likely be sufficiently obvious to a layperson. Millette has not shown this to be incorrect and, therefore, Alexander need not have provided medical proof as required by *Napier*.

Millette next cites *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013), to argue that Alexander's after-the-fact diagnosis of a fracture based upon an x-ray does not satisfy the objective component of deliberate indifference for events that occurred prior to the x-ray. *Burgess* is distinguishable because the plaintiff's injuries were latent medical injuries discovered only by a CT scan, contrasted to Alexander's injuries, which were likely sufficiently obvious for a layperson to recognize the need for treatment. *Id.* at 476–77.

Millette argues that the R & R's reliance on *Hubbard v. Gross*, 199 F. App'x 433 (6th Cir. 2006), is incorrect because the facts are distinguishable from Alexander's. Although the facts are different, the applicable legal standard is not, and Millette has not shown that the R & R's use of *Hubbard* was in error.

Millette runs through the relevant timeline of events regarding his treatment of Alexander's hands, to show that there was no objective evidence that Alexander had a fracture until the x-ray report of Alexander's hand. However, Alexander alleged that his hand was bruised, swollen, and made a bone-clicking noise—as noted by the R & R. Viewing the facts in a light most favorable to the non-movant, *i.e.*, Alexander, Millette has not shown that the R & R was incorrect in

3

concluding that the facts were so obvious that even a layperson would recognize the need for attention of a doctor.

Accordingly, Millette's first objection is overruled.

**2) The Subjective Component of Alexander's Deliberate Indifference Claim**

Millette argues that the R & R's conclusion that Alexander satisfied the subjective component of his deliberate indifference claim was incorrect. Millette argues that the allegations that Millette should have known that Alexander had a broken hand "might demonstrate negligence"—which is insufficient to state a claim or to satisfy the subjective prong of the test.

> Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Under *Farmer,* "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Blackmore*, 390 F.3d at 895–96 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 837, 114 S. Ct. 1970, 1978–79 (1994)). In *Blackmore*, the plaintiff complained of stomach pain, vomited, and received minimal treatment for over fifty hours. From these circumstances, the court found that a reasonable jury could conclude that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harms exists and the Defendants ignored that risk"—satisfying the subjective prong of the test. *Id.* (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).

Millette's argument is incompatible with *Blackmore* and other precedent. As the R & R discussed, Alexander presented evidence that he repeatedly requested medical attention because of the pain, swelling, bruising, and bone-clicking noise in his hand. Defendants deny that Alexander requested medical attention as often as he claims. The R & R therefore concluded that there was a question of fact about whether Alexander did request medical attention. If he did,

4

Alexander's situation would be similar to *Blackmore*, satisfying the subjective prong. The question of fact, therefore, remains.

The R & R noted additional evidence that Alexander used to support the subjective prong. He stated that after his x-ray on January 6, 2014, the x-ray technician stated, "oh yeah, it looks fractured," to which Millette responded, "oh shit. Looks like we might be in trouble." (ECF No. 12 at PageID.769.) Millette argues that neither the x-ray technician nor Millette is qualified to interpret x-ray images. Qualification is a professional standard that would apply to a formal diagnosis—but is not necessary for an individual to comment on what he or she sees.

Accordingly, Millette's second objection is overruled.

**3) Millette's Actual Involvement in Alexander's Treatment**

Millette argues that if the Court looks at "his actual involvement, P.A. Millette was not deliberately indifferent." (ECF No. 143 at PageID.941.) Millette argues that when he first assessed Alexander, he determined that Alexander "had a bite wound, which he treated," and subsequent treatments demonstrate that Millette was not deliberately indifferent to Alexander's health concerns. As discussed above, Millette's arguments here do not resolve the R & R's conclusion that Alexander "has demonstrated that his medical need was not addressed within a reasonable time frame," and that there is a question of fact whether Alexander requested medical attention for his broken hand specifically. (ECF No. 137 at PageID.904–05.) Treatment for one condition, *i.e.*, wounds from the biting, does not necessarily absolve Millette of his failure to treat another condition, *i.e.*, the fracture. There are sufficient facts, as discussed in the R & R, to leave the matter to a jury.

Accordingly, Millette's third objection is overruled.

### 4) Whether Millette Ignored Alexander's Pain

Millette argues that the R & R "incorrectly suggests that P.A. Millette ignored Mr. Alexander's pain," and highlights the fact that Millette was aware of—and did not discontinue—pain medication that a nurse provided for Alexander. There is no record evidence, Millette asserts, that Alexander requested more pain medication or stated that the medication was not helping. (ECF No. 143 at PageID.942.) The pain medication issue was not a required finding of fact for the R & R to reach its conclusions given the other facts and circumstances—it is not a dispositive issue.

Accordingly, Millette's fourth objection is overruled.

### 5) Retaliation Claim Against Millette

Millette asserts that the R & R erred in finding that there is a genuine issue of material fact regarding Alexander's retaliation claim against Millette because there is a lack of admissible evidence showing that Millette was aware of any protected conduct by Alexander. The R & R concluded that because Alexander alleged that Millette denied him medical treatment because of his grievances against other MDOC employees, Alexander satisfied the motivation prong of a retaliation claim. Therefore, Millette failed to demonstrate that he was entitled to summary judgment.

Millette also asserts that he would have taken the same actions in the absence of any protected activity by Alexander—which would entitle him to summary judgment under *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). However, the court there held that "[c]ircumstantial evidence, like the timing of events . . . is appropriate" in proving that the actions were motivated, at least in part, by the protected conduct. *Id.* The court further held that the plaintiffs satisfied their burden in showing motivation by "more than simply alleg[ing] retaliation"—the plaintiffs

"put forward a number of specific, nonconclusory allegations and identified affirmative evidence that could support a jury verdict at trial." *Id.* at 399–400. The defendants inadequately responded with "summary denials." *Id.* at 400.

Millette has failed to show that the R & R's conclusions are incorrect and that he is entitled to summary judgment on Alexander's retaliation claim. Alexander cited the timing of events, *i.e.*, his grievances against other MDOC staff followed by Millette's alleged failure to treat him. Alexander also alleged that Millette commented, "oh s[hi]t. Looks like [we] might be in trouble. I gotta get [it] off my back" after seeing Alexander's fracture. (ECF No. 53 at PageID.362 (second and third alteration in original).)[1] Millette argues that because the medical records show that he did treat Alexander, and, in his view the treatment was appropriate, his actions are no different than they would have been absent Alexander's earlier grievances—essentially a "summary denial" of Alexander's arguments. The Court agrees with the R & R's conclusions.

Accordingly, Millette's fifth objection is overruled.

**6) Conspiracy**

Millette points out that the R & R did not make a recommendation regarding Alexander's conspiracy claim under § 1983, and adopts his arguments on that claim from his supplemental brief filed on January 12, 2018. The relevant briefing timeline is as follows:

- March 31, 2017: Millette filed his motion to dismiss. (ECF No. 51.)

- October 13, 2017: Millette filed his motion for summary judgment, and did not address the conspiracy claim. (ECF No. 106.)

---

[1] Alexander's response to Millette's motion for summary judgment adopted his earlier arguments from his response to Millette's motion to dismiss. (ECF No. 123 at PageID.776.)

7

- October 18, 2017: Magistrate Judge Greeley issued a report and recommendation regarding Millette's motion to dismiss, recommending that the Court not dismiss Alexander's conspiracy claim. (ECF No. 113.)

- January 9, 2017: The Court adopted in part the October 18 report and recommendation. Alexander's conspiracy claim survives. (ECF No. 130.)

- January 12, 2018: Millette filed a supplement to his motion for summary judgment, arguing that Alexander's conspiracy claim should be dismissed. (ECF No. 131.)

- April 17, 2018: Magistrate Judge Greeley issued the R & R currently at issue, which does not address the conspiracy claim. (ECF No. 137.)

It is not appropriate for the Court to make a ruling on the conspiracy claim at this time. It is unclear why Millette filed a motion for summary judgment before the Court decided his motion to dismiss. By waiting to make the conspiracy argument in a supplemental brief—which Millette filed of his own accord without seeking permission of the Court—and seeking a decision on the matter now, Millette has attempted to deprive Alexander of an opportunity to respond to the matter.

"The district court does not have to accept every filing submitted by a party." *Ross, Brovins & Oehmke, P.C. v. LEXIS/NEXIS Grp.*, 463 F.3d 478, 488–89 (6th Cir. 2006). Because Millette did not seek leave from the Court to file his supplemental brief, the Court will not consider it. *See, e.g.*, *Harshaw v. Bethany Christian Servs.*, No. 1:08-CV-104, 2010 WL 610262, at *1 (W.D. Mich. Feb. 19, 2010). Millette may argue that he needed to file the supplemental brief because he had anticipated that the Court would dismiss the conspiracy claim. This conundrum is one entirely of Millette's own making—he should have filed his motion for summary judgment after the Court rendered a decision on his motion to dismiss, or Millette could have included his conspiracy arguments in the summary judgment motion in the event the Court did not dismiss the conspiracy

claim.  Considering his arguments now, for the first time, as an objection to the R & R—which correctly did not address it in the first place—would be inappropriate.

The R & R was accordingly correct in not considering Millette's conspiracy arguments because they were not before the Court in the underlying motion being considered.  Millette's request that the Court consider them now is similarly inappropriate.

Accordingly, Millette's sixth objection is overruled.

### **Alexander's Objections**

Alexander makes two objections to the R & R and the Court will address them each in turn.

**1) Events After January 9, 2014—Millette**

Alexander argues that the R & R was incorrect in recommending that his inadequate medical treatment claims against Millette after January 9, 2014, be dismissed.  Alexander argues that Millette interfered with the specialist's recommendations for retaliatory purposes, and that the Court should not consider Millette's affidavit because it is contradicted by the medical records. (ECF No. 144 at PageID.945–46.)  The R & R considered the contradictions between Millette's affidavit and medical records, *i.e.*, Millette stated that he directed Alexander to perform hand-strengthening exercises with a tennis ball, but the records show that Millette instructed Alexander to use a sock instead of a tennis ball—against the orthopedic specialist's recommendation.

Millette does not dispute that he recommended using a sock instead of a tennis ball, and highlights that he admitted as much in his reply brief.  (ECF No. 127 at PageID.840 ("Because Plaintiff did not have a tennis ball available to him in prison, [Millette] suggested a reasonable alternative (socks) for his hand strengthening exercises.").)  The inconsistency in the original— and unsigned—affidavit was apparently "an oversight on the part of counsel."  (ECF No. 149 at

PageID.974.) Millette accordingly submitted a corrected—and signed—affidavit on May 11, 2018, which included the sock recommendation. (ECF No. 150.)

As the R & R discussed, the record does not show that Millette *disregarded* the orthopedic specialist's orders. Instead, he considered them *recommendations*—particularly in light of the circumstances of incarceration, such as the difficulty in obtaining a tennis ball. This was insufficient to support Alexander's claims regardless of the record disputes at the time of the R & R. Therefore, Alexander has failed to show that the R & R was incorrect in dismissing his claims for events after January 9, 2014.

Accordingly, Alexander's first objection is overruled.

**2) Events After January 9, 2014—Waske**

Alexander argues that the R & R erred in concluding that his Eighth Amendment claims against Waske after January 9, 2014, should be dismissed. The R & R addressed this claim briefly: "Plaintiff alleges that Defendant Waske took Plaintiff's splint from him on February 19, 2014. However, Plaintiff received the splint back shortly thereafter." (ECF No. 137 at PageID.905.) Alexander argues that when he did receive a splint back, it was not from Waske and "[h]er violations should not be allowed to be 'saved' by someone else. Plaintiff suffered for days because of not having the splint with extreme pain." (ECF No. 144 at PageID.946.)

In the MDOC Defendants' response to Alexander's request for admissions, Waske admitted that she "was aware at one point that Plaintiff was involved in a fight and injured his hand." (ECF No. 120-2 at PageID.748.) Waske also admitted "that at one time, Plaintiff may have mentioned hand pain." Waske denied that she requested that Alexander return his splint and stated "that the medical provider instructed Plaintiff to return the splint." Further, "Plaintiff did complain at one time about hand pain [after the splint was taken away] and that on or about

February 24, 2014, the splint was provided again to Plaintiff." (*Id.* at PageID.749.) Alexander alleges that Waske "demanded" that he take the splint off and, in response to his protestations about his pain, Waske responded, "Do it look like I fucking care? Your hand can fall off for all I care. It's time to give it back right now." (ECF No. 120 at PageID.732.)

The Court agrees with Alexander in his objection. Most of his factual allegations against Waske are confirmed by her admissions, and the dispute about her demanding the splint back is a question of fact. In *Hubbard*, the court found that the "evidence does not show that [the plaintiff's] broken hand was so serious that a two-hour delay in receiving a splint is unreasonable." *Hubbard*, 199 F. App'x at 438. Alexander had a five-day delay in receiving his splint back for his broken hand. Viewing the facts in a light most favorable to Alexander and, for the same reasons the R & R recommended allowing Alexander's pre-January 9, 2014, claims to survive, the Court finds that Alexander's claim against Waske related to the splint should survive.[2]

Accordingly, the Court sustains Alexander's second objection and rejects the R & R in part as to the claim against Waske related to the splint.

## Conclusion

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that Defendant Millette's Objections (ECF No.143) are **OVERRULED**; Plaintiff Alexander's Objections (ECF No. 144) are **OVERRULED IN PART** as to his first objection and **SUSTAINED IN PART** as to his second objection; and the magistrate judge's Report and Recommendation (ECF No. 137) is **REJECTED IN PART** as to Plaintiff's

---

[2] MDOC Defendants, including Waske, did not file a reply brief to Alexander's response to their motion, and did not file a response to Alexander's objections. Their motion discussed the facts broadly and without particularity and have not addressed Alexander's particular factual allegations.

11

claim against Defendant Waske related to the splint and **APPROVED AND ADOPTED** as to all other claims.

The case will continue as to Alexander's claims against all Defendants for events prior to January 9, 2014, and as to his claims against Defendant Waske regarding the splint.


Dated: June 27, 2018                                         /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE